WMN:SLT

**M10-605**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

SEAN BERBERICH, and
MAX LEE STEIN,

   Defendants.

- - - - - - - - - - - - - - - - -X

C O M P L A I N T

(T. 21, U.S.C., §§ 846)

EASTERN DISTRICT OF NEW YORK, SS:

    RICHARD KERSHOW, being duly sworn, deposes and states that he is a Task Force Officer with the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

    Upon information and belief, on or about May 26, 2010, within the Eastern District of New York and elsewhere, the defendants SEAN BERBERICH and MAX LEE STEIN, together with others, did knowingly and intentionally conspire to possess with intent to distribute a controlled substance, which offense involved a substance containing marijuana, in violation of Title 21, United States Code, 841(a)(1).

    (Title 21, United States Code, Sections 846 and 841(b)(1)(D))

1

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Detective with the Nassau County Police Department, duly appointed according to law and acting as such. I have been a Nassau County Detective for approximately five years and am currently assigned to the Long Island District Office of the Drug Enforcement Administration Task Force (the "Task Force"), where I am tasked with investigating narcotics trafficking, money laundering and other offenses. I am cross-designated as a Special Agent of the Drug Enforcement Administration ("DEA"). During my tenure with the DEA, I have participated in numerous narcotics and money laundering investigations.

2. For more than three years, the DEA has been investigating a drug trafficking organization that is responsible for smuggling thousands of kilograms of marijuana into the United States through the Akwesasne Native American Reservation along the U.S.-Canadian border. The three-year investigation, which has included the use of court-authorized wire interceptions, information obtained from reliable sources of information,

---

[1] Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

2

physical surveillance and multiple seizures of narcotics and narcotics proceeds, revealed that the marijuana is supplied by drug traffickers in Canada, imported into the United States, brought to stash houses in the Eastern District of New York, and then distributed throughout the metropolitan New York area by street-level distributors. During the course of the investigation, law enforcement officers identified multiple vehicles used by the organization to pick up, transport and distribute narcotics and narcotics proceeds. Officers conducted traffic stops of several vehicles and executed search warrants on multiple stash locations used by members of the organization, resulting in the seizure of more than a thousand pounds of marijuana and nearly one million dollars in drug proceeds.

3.   On or about May 26, 2010, DEA agents intercepted communications from a member of the drug trafficking organization indicating that a shipment of approximately 50 to 100 pounds of marijuana was going to be delivered to a recipient in Staten Island, New York later the same evening. Intercepted communications further revealed that defendant SEAN BERBERICH would be driving the narcotics to a specified meeting location. In particular, BERBERICH himself was intercepted discussing the meeting location and his estimated time of arrival.

3

4. On the evening of May 26, 2010, DEA agents established surveillance at the pre-arranged meeting location specified by the intercepted communications and observed the defendants SEAN BERBERICH and MAX LEE STEIN arrive at the meeting location driving two different vehicles. BERBERICH and STEIN parked the two vehicles immediately next to each other, with the vehicles' bumpers practically touching. Agents then observed BERBERICH and STEIN exit their vehicles and begin looking around as if they were waiting for the arrival of another person.

5. A DEA agent acting in an undercover capacity (the "UC") then approached BERBERICH and STEIN and acknowledged them with a greeting. After exchanging greetings with the UC, BERBERICH stated "the stuff is right here," and motioned to the cargo area of the open-top jeep that he had been driving, which contained two large duffel bags. BERBERICH then instructed the UC to bring his car around and BERBERICH and STEIN would give him the "stuff." DEA agents then proceeded to arrest BERBERICH and STEIN.

6. A search of BERBERICH's jeep revealed two large duffel bags containing a green leafy substance that subsequently tested positive for marijuana. The marijuana was packaged into one-pound, heat-sealed clear plastic bags that were labeled "JK."

Intercepted communications prior to the transaction had revealed that the shipment of marijuana was expected to contain 50 pounds of "Jacks," a type of high-grade hydroponic marijuana grown in Canada. Based on my training and experience and the investigation that has been conducted thus far, I believe the label "JK" which was affixed to the heat-sealed bags of marijuana was a reference to the type of marijuana the bags contained - i.e., "Jacks." The total amount of marijuana seized from BERBERICH's vehicle was approximately 50 pounds.

7. Following his arrest, DEA agents read BERBERICH his *Miranda* warnings. BERBERICH waived his rights and agreed to provide a statement to the agents. In sum and substance, BERBERICH admitted that he was paid $1,000 to deliver the 50 pounds of marijuana to an unknown co-conspirator. A search incident to his arrest revealed $1,000 in United States currency on BERBERICH's person. BERBERICH acknowledged that the $1,000 in United States currency seized during this search was the money he was paid to transport and deliver the 50 pounds of marijuana.

8. Based on my training and experience, I know that the current retail price for the high-grade Canadian marijuana recovered from BERBERICH and STEIN is approximately $5,000 to

5

$6,000 per pound when distributed at the street level.[2] Accordingly, the 50 pounds of marijuana recovered from defendants SEAN BERBERICH and MAX LEE STEIN would have resulted in gross profits of at least $250,000.

WHEREFORE, your deponent respectfully requests that the defendants be dealt with according to law.

                                        Richard Kershow
                                        Task Force Officer
                                        Drug Enforcement Administration

Sworn to before me this
27th day of May 20**

---

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

---

[2] These numbers reflect conservative estimates based on my previous experience. The actual retail value of the seized marijuana will depend on the potency level of tetrahydrocannabinol ("THC").

6